[L.A. No. 31362. Nov. 30, 1981.]

WILLIAM BELL et al., Cross-complainants and Appellants, v.
INDUSTRIAL VANGAS, INC., Cross-defendant and Respondent.

## COUNSEL

Myron S. Lapidus, Angelo J. Manente, Cadoo, Tretheway, McGinn & Morgan and Bernard S. Shoeps for Cross-complainants and Appellants.

Leonard Sacks, Harvey R. Levine, Edward I. Pollock, Robert E. Cartwright, William M. Shernoff, Stephen I. Zetterberg, Arne Werchick, Ian Herzog, Glen T. Bashore, Victoria J. DeGoff, Engel & Babcock and R. Jay Engel as Amici Curiae on behalf of Cross-complainants and Appellants.

Vletas & Greer, Gus Vletas and Barry E. Shanley for Cross-defendant and Respondent.

Maier & Rogers and John L. Maier as Amici Curiae on behalf of Cross-defendant and Respondent.

## OPINION

**STANIFORTH, J.***—Appellant William Bell was employed by respondent Industrial Vangas, Inc. (Vangas), as a route salesman. He was severely injured in a fire which occurred when he delivered a flammable gas to the premises of a customer—Long Chemical, Inc.

Bell brought suit, charging Vangas and Long Chemical, Inc., and others as joint tortfeasors with strict "manufacturer's" liability as that term has been defined in California products liability law. (See *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal. Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Vandermark* v. *Ford Mo-*

*Assigned by the Chairperson of the Judicial Council.

*tor Co.* (1964) 61 Cal.2d 256, 262 [37 Cal.Rptr. 896, 391 P.2d 168]; *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 251-254 [85 Cal.Rptr. 178, 466 P.2d 722]; *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103, 107 [137 Cal.Rptr. 797]; Prosser, Law of Torts (4th ed. 1971) pp. 663-665.) He alleged they "were engaged in the business of designing, manufacturing, purchasing, producing, constructing, assembling, processing, preparing, testing, inspecting, maintaining, repairing, installing, endorsing, selling, leasing, bailing, licensing the use of, and otherwise marketing" defective products that proximately caused his injuries. The trial court finding no triable issue of fact, granted Vangas' motion for summary judgment on the ground Bell's exclusive remedy against Vangas, his employer, was workers' compensation. Bell appeals.

Bell's pleading, when construed with the liberality required in motions brought under Code of Civil Procedure section 437c, alleges a cause of action against both Vangas and Long Chemical on the basis of their being "manufacturers" of a defective product. Factual issues bristle in the pleading papers before the trial court.[1]

I

The finding of a triable issue of fact, however, does not ipso facto require reversal, for Vangas has a second, a legal, arrow in its quiver to support the trial court's grant of summary judgment. Vangas reasons: Bell was Vangas' employee, injured while engaged in his employer's work; he has already received a workers' compensation award and therefore is precluded from suing his employer for tort damages as a matter of law; workers' compensation is the "exclusive remedy"; "Pandora's box" will be opened, argues the employer, if Bell is permitted to

---

[1]Vangas argues that even assuming workers' compensation is not the exclusive remedy, Bell has failed to state a cause of action in strict products liability because Vangas is not in the business of manufacturing or marketing any of the allegedly defective products. While an uncontradicted declaration submitted in support of Vangas' motion adequately refutes any suggestion that Vangas was in the business of manufacturing or marketing the delivery truck driven by Bell, the complaint also refers to numerous other allegedly defective products which proximately caused Bell's injuries. While the declaration asserts such products were not manufactured by Vangas, it does not similarly deny any involvement in marketing or distribution which may be sufficient to give rise to strict liability for a defective product. (See, e.g., *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 250-251 [85 Cal.Rptr. 178, 466 P.2d 722].) Since a defendant moving for summary judgment has the burden of negating every alternative theory of liability presented by the pleadings (see, e.g., *Pearl* v. *Shore* (1971) 17 Cal.App.3d 608, 613 [95 Cal.Rptr. 157]; *Fuller* v. *Goodyear Tire & Rubber Co.* (1970) 7 Cal.App.3d 690, 693 [86 Cal.Rptr. 705]), the Vangas declaration is insufficient to support the granting of summary judgment.

sue; there is a recognized statutory "tradeoff" embodied in the workers' compensation scheme and to whittle away at one side of that equation is to upset a delicately struck balance.

To support its underlying thesis, Vangas points to judicial declarations to this effect: "'In the most explicit terms, [Labor Code] section 3600 declares the exclusive character of the employer's workmen's compensation liability in lieu of any *other* liability to *any* person. Sections 3600 and 3601 form a complementary, unmistakable declaration of legislative policy . . . .'"[2] (*Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499, 503 [125 Cal.Rptr. 872], quoting *Pacific Gas & Elec. Co.* v. *Morse* (1970) 6 Cal.App.3d 707, 713-714 [86 Cal.Rptr. 7].)

## II

The 37-year history of California legal precedents—buttressed by an analysis of the Workers' Compensation Act (Act) and its constitutional foundations and underlying public policy considerations—contradicts the employer's overbroad statement of the scope of the "exclusive remedy" doctrine.

This court, as well as appellate courts of this state, has authored many opinions recognizing employees' rights to recover damages from the employer for injuries sustained in a jobsite setting in addition to those allowed by workers' compensation law. These decisions have not ignored the "plain unambiguous" language of sections 3600 and 3601. Rather, the courts have followed the lead of the California Legislature when, in 1937, it codified earlier statutory provisions in Labor Code

---

[2]Labor Code section 3600, excluding certain exceptions not relevant herein, provides: "Liability for the compensation provided by this division, *in lieu of any other liability whatsoever to any person . . . shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment . . .* in those cases where the following conditions of compensation concur:
"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
"(b) Where, at the time of injury, *the employee is performing service growing out of and incidental to his employment* and is acting within the course of his employment.
"(c) *Where the injury is proximately caused by the employment, either with or without negligence.*" (Italics added.)
And Labor Code section 3601, insofar as relevant here, provides: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment . . . ."

sections 3852 through 3860, inclusive, and gave unqualified[3] authority to the employee to sue for damages against *"any person other than the employer"* responsible to some degree for a worker's jobsite injury. (See *County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 873 [140 Cal.Rptr. 638, 568 P.2d 363].)

In 1944, this court in *Baugh* v. *Rogers*, 24 Cal.2d 200, 213, 214 [148 P.2d 633, 152 A.L.R. 1043], held an *employer's* (driver-lessee of an auto) *negligence* was to be imputed to the third party lessor in a suit by an employee injured in the scope of employment. The negligent employer-driver's liability for workers' compensation did not bar recovery from the third party by the injured employee. This court reasoned: *"[T]he Labor Code does not purport to alter the correlative rights and liabilities of persons who do not occupy the reciprocal statuses of employer and employee. Our workmen's compensation laws were not designed to relieve one other than the employer from any liability imposed by statute or by common law. 'The claim of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person other than the employer.'* (Lab. Code, § 3852; . . . .) The employee's right to recover against a third person is not affected by the fact that the 'person other than the employer' is not a stranger but has entered into a consensual legal relationship with the employer. [Citations.]" (*Id.*, at p. 214; italics added.) The dissenters in *Baugh* express the same fears and articulate reasons similar to the dissent here.

What has come to be known as the "dual capacity" doctrine[4] was first recognized and applied in the landmark case of *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8], where Duprey, a nurse, sustained

---

[3]The employees' right to sue "some other person than the employer" for damages for a jobsite injury was first granted by statute in 1917. (Stats. 1917, ch. 586, § 26, p. 854.) This right was subject inter alia to such provisos as notification of the employer, permissive joinder by the employer and where joinder did occur "damages shall be so apportioned that the claim of the employer shall take precedence over that of the injured employee and if the damages shall not be sufficient or shall only be sufficient to reimburse the employer . . . such damages shall be assessed in his [the employer's] favor."

[4]This concept assumes a logical, rational and legally self-evident premise. An individual can act in two or more different, distinct capacities, either simultaneously or sequentially, giving rise in law to separate and distinct sets of obligations. There is no fictional character, no need to create any "Doppelganger" to support the rule as long applied in California; only a recognition of a simple fact—one person can have separate and distinct legal personalities.

an industrial injury while employed by Shane, a chiropractor. Although he carried workers' compensation insurance, Shane and another chiropractor employed by him undertook personally to treat Duprey for the injury and, as it was found, did so negligently. This court upheld a recovery in an action for malpractice, reasoning that in treating Duprey, Shane was acting as an attending doctor rather than as an employer and that "'the employer-doctor is a "person other than the employer" within the meaning of section 3852 of the Labor Code . . . .'" (*Id.,* at p. 793.) This court reasoned: "It is true that the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic. But where, as here, it is perfectly apparent that the person involved—Dr. Shane—bore towards his employee two relationships—that of employer and that of a doctor—there should be no hesitancy in recognizing this fact as a fact. Such a conclusion, in this case, is in precise accord with the facts and is realistic and not legalistic." (*Ibid.*)

Since *Duprey*, California courts have applied the dual capacity concept in a variety of factual situations. The dual capacity doctrine has been recognized and applied where the employer in one capacity—proprietor of a dairy produce business—supplied defective products from a separate legal entity of which the employer was also a general partner. (*Dorado* v. *Knudsen Corp.* (1980) 103 Cal.App.3d 605, 612 [163 Cal. Rptr. 477].)

And in *Shook* v. *Jacuzzi* (1976) 59 Cal.App.3d 978, 981-982 [129 Cal.Rptr. 496], the court recognized the dual capacity doctrine and its application to an employer guilty of faulty design or manufacture, etc., of equipment which caused the employee injuries but held the principle nonapplicable, stating: "We note, also, that products liability rules do not apply in the circumstances here shown. International created the machine exclusively for its own use in its own plant and premises. *It did not sell the machine or in any way place it in the stream of commerce. Rather, it was but an occasional or casual manufacturer, and thus not subject to strict liability* (see Rest.2d Torts, § 402-A, com. f; 4 Witkin, Summary of Cal. Law, pp. 3126-3127). Its design and construction of this machine was but auxiliary to its principal manufacturing operation. As such, it does not subject International to products liability to its employees . . . ." (*Id.*, at p. 981.) In *Williams* v. *State Compensation Ins. Fund* (1975) 50 Cal.App.3d 116, 120 [123 Cal.Rptr. 812], the court in confronting a similar pleading posture, stated: "Plaintiffs argue that in designing and manufacturing the spraying machine, Wallace Brothers assumed a dual role as employer and manufacturer, incurring common

law liability in the latter capacity. At this point plaintiffs rely on *Duprey v. Shane*, 39 Cal.2d 781 ....*" (Id.*, at p. 121.) but held the demurrer properly sustained, explaining: *"Here there is no allegation that Wallace Brothers manufactured spraying machines as a business enterprise separate from that employing plaintiff Williams. Rather, the complaint shows that the firm created the machine for use by its own employees in its own production or service operations.* Many entrepreneurs build and supply appliances and equipment exclusively for use in their own plants or premises. That sort of activity is integral and auxiliary to the firm's principal manufacturing or production operation." (*Ibid.*)

In face of a claim of exclusivity of remedy under Labor Code section 3601, this court in *Unruh v. Truck Insurance Exchange* (1972) 7 Cal. 3d 616, 630 [102 Cal.Rptr. 815, 498 P.2d 1063], allowed an action at law against an *insurer* of the employer for assault, battery and intentional infliction of emotional distress based upon deceitful conduct in investigating the workers' compensation action. The *Unruh* holding that the insurer could be sued as a "person other than the employer" (Lab. Code, § 3852) was based upon the "dual capacity" principle enunciated in *Duprey v. Shane, supra*, 39 Cal.2d 781.

This court most recently in referring to the *Unruh* holding said: "By analogy to *Duprey*, it was determined that the insurer in *Unruh* was 'invested with a dual personality' so that while it was performing its proper role within the compensation system it stood in the position of plaintiff's employer and was immune from suit, but when it stepped outside that role by committing an intentional tort, it 'became a person other than the employer' like the doctor in the *Duprey* case, and subject to liability at law.... *Unruh* involved the liability of the insurer as the alter ego of the employer ...." (*Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465, 476, fn. 10 [165 Cal.Rptr. 858, 612 P.2d 948].)[5]

Closest in point of factual application are the recent California appellate court cases in which the dual capacity doctrine has been applied to a defendant who occupied the dual positions of employer and manufac-

---

[5]Professor Larson, the foremost scholarly proponent of the dual capacity concept, characterizes *Duprey* as "one of [the] most interesting applications" of the dual capacity doctrine, but feels this court "ran the doctrine into the ground in *Unruh [Unruh v. Truck Insurance Exchange, supra*, 7 Cal.3d 616]." (2A Larson, Workmen's Compensation Law (1976) § 72.80, p. 14-118.)

turer of a defective product sold to the public. In *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103, 107 [137 Cal.Rptr. 797], the defendant—both an employer and a manufacturer of scaffolds sold to the general public—was held liable for damages in the latter role to an employee injured while using one of the scaffolds. And in *Moreno* v. *Leslie's Pool Mart* (1980) 110 Cal.App.3d 179 [167 Cal.Rptr. 747], an employer engaged in the selling of pools also was a "manufacturer"-distributor to the public of swimming pool maintenance products. The Court of Appeal reversed a summary judgment in favor of the employer where the employees' suit for damages was based on strict liability for a defective product.

Most recently, this court (*D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661, 666-667 [166 Cal.Rptr. 177, 613 P.2d 238]) applied the dual capacity concept, saying: "Underlying *Duprey* is the rationale that if any injury arises from a relationship which is distinct from that of employer and employee and invokes a different set of obligations than the employer's duties to its employee, there is no justification for shielding the employer from liability at common law.

"*Larson* declares that the decisive test of dual capacity is whether the nonemployer aspect of the employer's activity generates a different set of obligations by the employer toward the employee." This court then held: "*In treating plaintiff's disease the county owed her a duty separate and distinct from its duty as her employer, and this was the duty to provide medical care free of negligence—the same duty that it owes to any member of the public who becomes a patient at its hospital.*" (*Id.*, at p. 669.) *These principles parallel and support Bell's precise legal and factual claim here.*

## III

An analytic examination of the "exclusivity" language of the Labor Code sections and their constitutional foundation lends support to the 37 years of judicial interpretation which approve and apply the dual capacity doctrine. Workers' compensation laws in the United States and California had their genesis in the inability of the 19th century common law remedies to cope with modern industrialism and its inherent unfairness to injured workers. Implicit therefrom is the concept that workers' compensation statutes relate generally to the legal status or relationship between *employer and employee.* Perhaps best expressing the view that workers' compensation was one essentially of status is the comment of

the United States Supreme Court in *Cudahy Packing Co.* v. *Parramore* (1923) 263 U.S. 418, 423 [68 L.Ed. 366, 369, 44 S.Ct. 153, 154, 30 A.L.R. 532]: *"Workmen's compensation legislation rests upon the idea of status, . . . that is, upon* the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital,—the one for the sake of the wages and the other for the sake of the profits. *The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured."* (Italics added.)

The essentiality of the "status" requirement is connoted in Labor Code sections 3600 and 3601 by the usage of the very terms "employer" and "employee." Moreover, the importance of the existence of this status for the applicability of California workers' compensation is readily discernible from the multiplicity of cases addressing the issues of whether one was an *"employee"* or whether the injury was one "received . . . in the course of or arising out of," the injured employee's employment.

■ The purpose of the Act was to compensate for losses resulting from the risks to which the fact of employment in the industry exposes the employee. Liability under the Act is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment and because the injury arose out of and in the course of the employment. If the duty flows solely from the employment relationship and the injury "arises out of" and "during the course of" that employment, then the recited policy considerations behind the exclusive remedy in workers' compensation mandating that the employer be immune from tort liability have viability. If, however, an additional concurrent duty flows from an "extra" employer status or a relationship that is distinct from that of employer-employee and invokes a different set of obligations, then a second capacity arises and the employer status is coincidental. The employer should then be treated as any third party tortfeasor, not immune from a common law tort action. (*D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661, 666 [166 Cal.Rptr. 177, 613 P.2d 238]; Note (1979) 12 Ind.L.Rev. 553, 561; see also *United States Fid. & Guar. Co.* v. *Kaiser Gypsum Co., Inc.* (1975) 273 Ore. 162 [539 P.2d 1065, 1067].) To extend, to enlarge, the limitation on the injured employees' remedy beyond the purposes of the Act is to violate the spirit of the workers'

compensation law. A failure to recognize the dual capacity doctrine in this case would accomplish such a wrong.

Workers' compensation laws were adopted long before a manufacturer's strict liability in tort—the *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, doctrine—came into vogue. Thus, there is no justification whatsoever for finding any legislative intent to adopt a scheme in 1911-1917 that would withhold from an employee the protection that *Greenman* v. *Yuba Power Products, Inc.,* now requires "manufacturers" provide every member of the using public. The "historic tradeoff" did not encompass the giving up of rights not yet in being.

Former article XX, section 21 of the California Constitution[6] authorized the Legislature to enact laws to create and enforce liability for compensation to be paid by employers for injuries to employees. It did not, it does not now, expressly or by implication place any limitation on the amount to be recovered for injuries from parties other than the employer.

To accept Vangas' construction and application of these statutes would require this court to hold that employees are not entitled to maintain a products liability action against a manufacturer in circumstances where all other users of defective products could maintain such an action. By interpreting the workers' compensation law in harmony with product liability doctrine, a manufacturer will not escape liability to its employees for defective products where there would be liability to any other injured person. (*Dept. of Corrections* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 207 [152 Cal.Rptr. 345, 589 P.2d 853].) As it was pithily put by the Ohio Appeals Court in *Mercer* v. *Uniroyal, Inc.* (1976) 49 Ohio App.2d 279 [3 Ohio Ops.3d 333, 361 N.E.2d 492, 496]: "It was only a matter of circumstance that the tire on the truck in which the plaintiff was riding was a Uniroyal [the employer's] tire rather than a Sears, Goodyear or Goodrich."

## IV

The trial court refused Bell the protection granted to every other user of manufactured products. Such result runs counter to the long term trend of California tort law and disrupts accepted loss distribution

---

[6]As amended in 1918. Section 21 of article XX was repealed in 1976 and its provisions were reenacted as section 4 of article XIV.

systems.[7] The application of this 37-year precedent to the complaint is rooted in sound public policy and is justified by societal needs.

The imperative of public safety, the deterrence of manufacture of shoddy products, was a powerful force motivating the establishment of product liability law. The manufacturer is held strictly liable because it "is in a peculiarly strategic position to promote the safety of [its] products .... [T]he pressure of strict liability could scarcely be exerted at a better point if accident prevention is to be furthered by tort law." (James, *General Products—Should Manufacturers Be Liable Without Negligence?* (1957) 24 Tenn.L.Rev. 923.)

Vangas, as a "manufacturer" who sells its products to the public, continues to be strictly liable to nonemployee consumers; there is naught to commend a rule of the law which would encourage manufacturers to do less in the area of product safety if by chance the product is to be used by their own employees. The inherent deterrent aspect of a manufacturer's strict liability law is thwarted if the manufacturer has no responsibility to its employees (or the third party joint tortfeasors) beyond a workers' compensation award.

The obligations Vangas owed as a manufacturer-designer-seller of equipment to all users was entirely independent of those obligations imposed upon it as an employer. (Cf. 2A Larson, Workmen's Compensation Law, § 72.80.) "Manufacturer" Vangas owed a duty to *all* foreseeable users of its product not to introduce a defective product into the stream of commerce. (Rest.2d Torts, § 402A.) Neither law nor right reason excludes employees of a manufacturer from this broad rule.

The public policy goals underlying product liability doctrine should not be subverted by the mere fortuitous circumstance that the injured individual was an employee of the manufacturer whose product caused the injury. If the injured individual had not been an employee, he would have had a cause of action against the defendant. To deny Bell such a

---

[7]Complete and scholarly expositions of the theoretical and societal justifications of this doctrine are found in Comment, *Workmen's Compensation and Employer Suability: The Dual Capacity Doctrine* (1974) 5 St. Mary's L.J. 818; Note, *Dual Capacity Doctrine: Third-Party Liability of Employer-Manufacturer in Products Liability Litigation* (1979) 12 Ind.L.Rev. 553; Note, *The Third Party's Right to Contribution From an Employer Covered by Workmen's Compensation* (1980) 56 N.D.L.Rev. 373; and Comment, *Manufacturer's Liability as a Dual Capacity of an Employer* (1979) 12 Akron L.Rev. 747.

cause of action because he is an employee, gives the employer more protection than envisioned by the 1911 Act. In effect, the trial court rule would permit a manufacturer to test new products, utilizing his employees, and limit his liability from resulting injuries from a defective product to workers' compensation remedies. This is unsound social engineering grossly unfair to the worker.

One final thought germane to societal concerns with the rule selected: A most perceptive scholar has criticized those decisions refusing to apply the dual capacity rule, saying: "[This view] considers the dual capacity doctrine to be antagonistic to the perpetuation of the workmen's compensation scheme. This conclusion may not necessarily be warranted because, under both workmen's compensation or a consumer rights theory, the ultimate goal is to reduce the burden of recovery faced by the employee or consumer, and to shift any loss onto the industry that created the initial risk of injury. By rejecting the dual capacity doctrine, the employer is permitted to escape full liability for the defective manufacture of goods simply by using those goods in his own plant.... The employee, an intended and foreseeable user, must, therefore, bear the full loss under the consumer loss-disbursement mechanism, while a non-employee party can force that loss onto the manufacturer. Thus, a smaller loss will usually be shifted onto the industry through the worker loss-disbursement mechanism of workman's compensation than that which would be shifted if the consumer loss-disbursement mechanism were to be invoked." (Note, *Dual Capacity Doctrine: Third-Party Liability of Employer-Manufacturer in Products Liability Litigation* (1979) *supra*, 12 Ind.L.Rev. 553, 580.)

V

California's historic and current preeminence in applying the dual capacity doctrine must be contrasted with prevailing—weight of authority—views found in sister states. Without doubt, if Bell's case is to be decided by an arithmetic head count of jurisdictions that have considered the issue, the prevailing weight of authority would hold workers' compensation to be the exclusive remedy. (See *Douglas v. E. & J. Gallo Winery, supra*, 69 Cal.App.3d at p. 110, fn. 5(b); 2A Larson, *supra*, § 72.80, and 1979 supp.)[8]

---

[8]Of greater significance than a counting of judicial noses is the trend of recent decisions from courts in jurisdictions with socio-economic-labor-demographic-historical characteristics more closely akin to California which have adopted the dual capacity

A close examination of decisions which refuse to apply the dual capacity doctrine demonstrates that these decisions come from jurisdictions that (1) have wide variants in statutory "exclusivity" language, (2) still adhere to our abandoned contributory negligence/assumption of risk rules, (3) stubbornly refuse to allow actions against a third party tortfeasor, and (4) flatly refuse to apply equitable indemnity or contribution principles in jobsite injuries.

Perhaps the clearest, most authoritative (outside California) exposition of the dual capacity concept is to be found in the United States Supreme Court decision of *Reed* v. *The Yaka* [1963] (373 U.S. 410 [10 L.Ed.2d 448, 83 S.Ct. 1349]). There plaintiff's employer, a stevedoring company, leased a ship under a bareboat charter; the plaintiff, a longshoreman, was injured while loading the vessel. Although the plaintiff was entitled to his compensation benefits, he brought an action against his employer as charterer alleging unseaworthiness of the vessel. The employer defended on the basis of the exclusive remedy provision in the Longshoremen's and Harbor Workers' Compensation Act. Without using the dual-capacity terminology, the court's holding was consistent with the reasoning behind the dual-capacity theory. The employer was liable to his employee *as a bareboat charterer* for injuries arising from the unseaworthiness of the chartered vessel. The defendant had the duty as the bareboat charterer to provide the employee a seaworthy vessel. That duty was "traditional, absolute and nondelegable" (*id.*, at p. 415 [10 L.Ed.2d at p. 452]) and could not be avoided by the exclusive remedy provision of the the Longshoremen's Act.

In so finding, the Supreme Court commented, at page 415 [10 L.Ed.2d at pages 452-453]: "[*O*]*nly blind adherence to the superficial meaning of a statute could prompt us to ignore the fact that Pan-Atlantic was not only an employer of longshoremen but was also a bareboat charterer and operator of a ship and, as such, was charged with the traditional, absolute, and nondelegable obligation of seaworthiness which it should not be permitted to avoid* .... We think it

doctrine. (See *Smith* v. *Metropolitan Sanitary Dist., etc.* (1979) 77 Ill.2d 313 [396 N.E.2d 524]; *Goetz* v. *Avildsen Tool & Machines, Inc.* (1980) 82 Ill.App.3d 1054 [403 N.E.2d 555, 559-560]; *McCormick* v. *Caterpillar Tractor Co.* (1980) 82 Ill.App.3d 77 [402 N.E.2d 412, 414-415]; *Mercer* v. *Uniroyal, Inc.* (1976) 49 Ohio App.2d 279 [3 Ohio Ops.3d 333, 361 N.E.2d 492]; *Guy* v. *Arthur H. Thomas Co.* (1978) 55 Ohio St.2d 183 [9 Ohio Ops.3d 138, 378 N.E.2d 488, 490-492]; *DePaolo* v. *Spaulding Fiber Co., Inc.* (1979) 119 N.H. 89 [397 A.2d 1048] (a *Shook* v. *Jacuzzi, supra,* 59 Cal. App.3d 978, ruling [product not manufactured for sale generally to public]); *Toland* v. *Atlantic Gahagan Joint Venture Dredge, #1* (1970) 57 N.J. 205 [271 A.2d 2, 3].)

would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help longshoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service. *Petitioner's need for protection from unseaworthiness was neither more nor less than that of a longshoreman working for a stevedoring company.*" (Italics added; fn. omitted.) The dissent in *Reed* (parallelling Vangas' argument) decries "the violence done to the statutory scheme" (*id.,* at p. 416 [10 L.Ed.2d at p. 453]) of exclusiveness of liability under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. § 905).[9]

## VI

In sum, Bell's complaint discloses injuries arising from two concurrent causes: the employment relation (for which Vangas is liable under workers' compensation law) coinciding with a defective product (for which Vangas is here sought to be held liable as the manufacturer).

The principle enunciated and approved by this court from *Duprey, supra,* 39 Cal.2d 781, to *D'Angona, supra,* 27 Cal.3d 661, compels the conclusion that a coincidental employment relationship will not shield an employer from a common law liability where the concurrent cause of the injury is attributable to the employer's separate and distinct relationship to the employee and which invokes a different set of obligations than the employer's duties to its employees.

A refusal to apply the "dual capacity" principles where facts fulfilling these conditions are posited by the complaint would constitute a specie of legal wrong in the form of an unjustified abandonment of long established, well reasoned precedent. Such refusal would as well inflict "a harsh and incongruous result" in the form of an inadequate recovery for injuries received. (See *Edmonds* v. *Compagnie Generale Transatl., su-*

---

[9]The *Reed* v. *The Yaka* rule has been followed by later United States Supreme Court and appellate court decisions (see *Jackson* v. *Lykes Steamship Co.* (1967) 386 U.S. 731 [18 L.Ed.2d 488, 87 S.Ct. 1419]; *Smith* v. *M/V Captain Fred* (5th Cir. 1977) 546 F.2d 119, 122, 123; *Napoli* v. *Transpacific Carriers, etc. Hellenic Line Ltd.* (2d Cir. 1976) 536 F.2d 505; *Griffith* v. *Wheeling Pittsburg Steel Corp.* (3d Cir. 1975) 521 F.2d 31; cert. den. 423 U.S. 1054 [46 L.Ed.2d 643, 96 S.Ct. 785]; *Longmire* v. *Sea Drilling Corp.* (5th Cir. 1980) 610 F.2d 1342, 1353) but did not survive congressional overruling (see *Edmonds* v. *Compagnie Generale Transatl.* (1979) 443 U.S. 256, 261 [61 L.Ed.2d 521, 527-528, 99 S.Ct. 2753]).

*pra*, 443 U.S. 256, 261, fn. 9 [61 L.Ed.2d 521, 528]; 1A Larson, Law of Workmen's Compensation (1978) § 2.50.)

Little more than one year ago this unanimous court most succinctly summarized the applicable and controlling law: "[I]f any injury arises from a relationship which is distinct from that of employer and employee and invokes a different set of obligations than the employer's duties to its employee, there is no justification for shielding the employer from liability at common law." (*D'Angona* v. *County of Los Angeles, supra*, 27 Cal.3d 661, 666.) Bell is no less entitled than was Linda D'Angona to the application of these sound rules. The grant of summary judgment was not warranted.

Judgment reversed.

Bird, C. J., Tobriner, J., Newman, J., and Wiener, J.,* concurred.

**RICHARDSON, J.**—I respectfully dissent. The majority holds, contrary to both the great weight of authority and the express language of controlling California statutes, that an employer is liable in tort to any employee injured in the course of his employment as a result of defective products or equipment manufactured by the employer. In my view, the workers' compensation laws afford the sole and exclusive remedy to the employee against his employer in such a situation.

Employer Vangas' contention that employee Bell's workers' compensation remedy is exclusive is statutorily founded. The Legislature has been very clear. Labor Code section 3600 provides: "Liability for the compensation provided by this division, [is] *in lieu of any other liability whatsoever to any person* . . . ." (Italics added.) If this statutory expression is not sufficiently specific, the following section, 3601, subdivision (a), recites that *"Where the conditions of compensation exist*, the right to recover such compensation, pursuant to the provisions of this division is, . . . *the exclusive remedy for injury or death of an employee against the employer* . . . ." (Italics added.)

The majority opinion suggests that the employment relationship in this case was "'only a matter of circumstance.'" (*Ante*, p. 278.) With due respect, this suggestion of a lack of causal relationship between Bell's injury and his employment is, frankly, absurd. As the majority

---

*Assigned by the Chairperson of the Judicial Council.

opinion itself states in its opening paragraph, "Appellant William Bell was employed by respondent Industrial Vangas, Inc., as a route salesman. He was severely injured in a fire *which occurred when he delivered a flammable gas to the premises of a customer . . . .*" (Italics added.) Indeed, it is uncontradicted that Bell has *already successfully pursued to finality* his workers' compensation remedy against Vangas, which requires as a prerequisite that the injury occur during the course of employment. Thus, I find it beyond reasonable dispute that, in the words of Labor Code section 3601, subdivision (a), "the conditions of compensation exist," and, accordingly, "the right to recover such compensation . . . is the *exclusive remedy* . . . against the employer." (Italics added.)

Bell never has contended that his injury was nonindustrial. Rather, having previously recovered full workers' compensation, he sought an *additional* remedy based on the theory that because Vangas was acting in a "dual capacity" as both manufacturer and employer, a strict liability tort recovery is also available to him. The majority permits it. I would not.

The so-called "dual capacity" doctrine originated in *Duprey v. Shane* (1952) 39 Cal.2d 781 [249 P.2d 8], wherein we announced a limited exception to the exclusive remedy rule. In *Duprey*, a nurse, injured in a previous work-related accident, sued her employer-physician for medical malpractice committed during the course of treating her injuries. We sustained the action, concluding that once an employer assumes the role of physician in treating the industrial injury, "the employer-doctor is a 'person other than the employer' within the meaning of section 3852 of the Labor Code [authorizing tort recovery by the injured employee] . . . . In treating the injury Dr. Shane did not do so because of the employer-employee relationship, but . . . as an attending doctor, and his relationship to [plaintiff] was that of doctor and patient." (39 Cal.2d at p. 793; for more recent considerations of the dual capacity doctrine see *D'Angona v. County of Los Angeles* (1980) 27 Cal.3d 661, 666-668 [166 Cal.Rptr. 177, 613 P.2d 238] [employer-hospital liable for aggravating industrial disease]; *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465, 473-478 [165 Cal.Rptr. 858, 612 P.2d 948], and fns. 8, 10 [employer liable for aggravation of injury caused by fraudulent concealment of occupational disease]; see generally 2A Larson, Workmen's Compensation Law (1976) § 72.80, p. 14-112 and Supp.)

In his present action, Bell purports to sue his employer in its several capacities referable to the equipment or products which caused his injuries. The complaint alleges a variety of roles assumed by Vangas, including "designing, manufacturing, purchasing, producing, constructing, assembling, processing, testing, inspecting, maintaining, repairing, installing, endorsing, selling, leasing, bailing, licensing the use of, and otherwise marketing" its products. Because the description of these various activities adds nothing of legal significance to the complaint, for simplicity I consider Vangas as a "manufacturer" of the allegedly defective equipment. In the majority's view, Bell may sue Vangas in tort in its capacity as manufacturer of the vehicle, apart from its role as Bell's employer, based upon its breach of a general duty of care owed to all members of the public who purchase or use its products.

Most employers, however, assume additional roles or responsibilities which create particularized duties of care toward the public generally, whether as landowners, retailers, manufacturers, designers or sellers. To hold that an employee may sue in tort whenever an employer breaches such general duties owed to the public at large would, in my view, significantly affect the operation of the workers' compensation system and substantially alter the carefully constructed and fundamental balance between the rights and interests of employees and employers which is the cornerstone of workers' compensation laws. To preserve that balance, the dual capacity doctrine should be limited to those situations in which "the nonemployer aspect of the employer's activity generates a different set of obligations by the employer toward the employee." (*D'Angona, supra*, 27 Cal.3d at p. 667; see 2A Larson, *supra*, at pp. 14-117, 14-118.) The strict liability imposed by law upon a manufacturer (under products liability law) is no greater than that which is fastened upon the employer (under workers' compensation law). While the remedies differ, common law in the one instance and statutory in the other, Vangas' obligations toward Bell were coequal and coextensive in either capacity. Moreover, in the present case, Vangas' roles as manufacturer and employer were assumed concurrently; no *change* in capacity occurred. There was no point during Bell's use of the equipment that he ceased to be an employee. In *Duprey*, on the other hand, the defendant stepped out of his general role as employer into a special capacity as physician. The *Duprey* injury did not occur during the course of her employment by Dr. Shane, but rather during his medical treatment of her as his patient. The legal obligations which Dr. Shane owed to Duprey as his patient were entirely different from those which he owed her as his employee. This is the precise point which we stressed

last year in *D'Angona* when we said: "The relationship between a county which operates a public hospital and its patients clearly involves a different set of obligations from the hospital's obligations toward its employees." (P. 667 of 27 Cal.3d.)

A substantial majority of cases which have considered the issue, including those of our California appellate courts, fully agrees with the foregoing analysis. Thus, in *Shook* v. *Jacuzzi* (1976) 59 Cal.App.3d 978 [129 Cal.Rptr. 496], the plaintiff-employee was injured while operating a machine used to manufacture automobile wheels. He attempted to recover tort damages from his employer based upon its allegedly separate capacity as "designer-manufacturer" of the machine. The *Shook* court observed that our *Duprey* decision was "readily distinguishable," stating that "In undertaking to treat the injured nurse [in *Duprey*], Dr. Shane assumed a role distinct in both time and nature from that of employer. Attempts to extend the rule of *Duprey* have been repeatedly rejected [citations]." (P. 980.)

Similarly, in *Williams* v. *State Compensation Ins. Fund* (1975) 50 Cal.App.3d 116 [123 Cal.Rptr. 812], plaintiff-employee sought to impose products liability upon his employer on the theory that it designed, manufactured and supplied a defective spraying machine for use by its employees, thereby assuming a dual role as employer and manufacturer. The court properly rejected this theory, stating that "The analogy to *Duprey* is faint and unpersuasive. There the doctor-employer stepped outside his role as employer, elected to treat the injured employee as a doctor and subjected himself to malpractice liability.... [¶] Here there is no allegation that [employer] manufactured spraying machines as a business enterprise separate from that employing plaintiff ...." (P. 121.)

The holdings in *Shook* and *Williams* are mirrored in many like decisions in our sister states. (See *Atchison* v. *Archer-Daniels-Midland Co.* (La.App. 1978) 360 So.2d 599, 600, cert. den. 362 So.2d 1389; *DePaolo* v. *Spaulding Fibre Co., Inc.* (1979) 119 N.H. 89 [397 A.2d 1048]; *Kottis* v. *United States Steel Corp.* (7th Cir. 1976) 543 F.2d 22, 24-26; *Mapson* v. *Montgomery White Trucks, Inc.* (Ala. 1978) 357 So.2d 971, 972-973; *Needham* v. *Fred's Frozen Foods, Inc.* (1977) 171 Ind.App. 671 [359 N.E.2d 544, 545]; *Rosales* v. *Verson Allsteel Press Co.* (1976) 41 Ill.App.3d 787 [354 N.E.2d 553, 556-557]; *Schlenk* v. *Aerial Contractors, Inc.* (N.D. 1978) 268 N.W.2d 466, 473-474; *Strickland* v. *Textron, Inc.* (D.S.C. 1977) 433 F.Supp. 326, 328-329;

*Vaughn* v. *Jernigan* (1978) 144 Ga.App. 745 [242 S.E.2d 482, 483]; *Winkler* v. *Hyster Co.* (1977) 54 Ill.App.3d 282 [369 N.E.2d 606, 608-610]; see 2A Larson, *supra*, § 72.80 and Supp.)

The majority relies, however, upon *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103 [137 Cal.Rptr. 797], wherein an employee injured in the course of his employment was permitted to sue his employer in its "secondary" capacity as manufacturer of the scaffold which caused plaintiff's injury. The *Douglas* court, relying upon the *Duprey* dual capacity doctrine, rationalized its holding as follows: "Our society is pluralistic. The same person (real or artificial) from time to time obviously adopts many *roles* in relationship with others. . . . [¶] An employer *qua* employer enjoys the cloak of immunity weaved by the workers' compensation law. But when an employer engages in the dual capacity of manufacturer of a product *for sale to the public*, the employer assumes all of the duties and liabilities of such manufacturer." (P. 110, italics added; see also *Moreno* v. *Leslie's Pool Mart* (1980) 110 Cal.App.3d 179, 182 [167 Cal.Rptr. 747]; *Mercer* v. *Uniroyal, Inc.* (1976) 49 Ohio App.2d 279 [3 Ohio Ops.3d 333, 361 N.E.2d 492, 495-496], adopting a similar rule.)

Those commentators most frequently recognized in the field have rejected the majority's reasoning. Thus, Professor Larson, a respected authority in the workers' compensation area, is highly critical of both *Douglas* and *Mercer*, characterizing them as "unsound applications of the dual-capacity concept. *They overlook the simple fact that the use of the product was a routine and integral part of the employment.* Dual capacity requires a distinct separate legal *persona*, not just a separate theory of liability of the same legal person." (2A Larson, *supra* (1981 supp.) p. 193, italics added.) In the case before us, use of the product in question was a "routine and integral part of" Bell's employment.

I am convinced that the majority's adoption of the *Douglas* rule will drive a substantial wedge into the exclusivity principle which has characterized the workers' compensation laws from their very inception. If an employer is to be held civilly liable to injured workers in the employer's capacity as a "manufacturer," what compelling reason can exist for denying similar liability for injuries attributable to the employer's other relationships including his status as "landowner," "motor vehicle operator," or "cafeteria proprietor"? Yet employers in our "pluralistic society" frequently assume multiple roles in the course of their ordinary business pursuits. For over 60 years, however, so long as the injury oc-

curs while the employee is acting in the course of his employment, the employer's liability properly has been statutorily limited to the payment of workers' compensation in each of these situations.

The majority opinion, in extended fashion, emphasizes the social policies favoring adequate recovery by injured employees such as Bell. There is no reason to believe that the Legislature is insensitive to these policies. Yet, the majority wholly fails to explain how we properly may ignore the plain, specific, unambiguous language appearing in both sections 3600 and 3601, statutorily mandating the exclusive remedy rule. It is not our function to tinker with these laws for the purpose of "improving" them. Moreover, if policy considerations were relevant here, surely the exclusivity rule is founded upon a sound policy of "reciprocal concessions," a policy which has been recognized historically as underlying the entire workers' compensation scheme. Unlike the ordinary consumer or user of manufactured goods, the employee-user under the workers' compensation laws is given an assured protection from impairment of earning capacity, and payment of medical expenses, without regard to any principles of comparative fault (see *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162]) or proof of defect (see *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1]) which are applicable in strict liability actions.

Thus, in consideration for such concessions, employer misconduct much more egregious than that alleged here remains compensable only through a workers' compensation remedy. (See, e.g., *Wright* v. *FMC Corp.* (1978) 81 Cal.App.3d 777, 779 [146 Cal.Rptr. 740] [employer's concealment of dangers inherent in work materials]; see also *Johns-Manville Products Corp.* v. *Superior Court, supra,* 27 Cal.3d 465, 474-475.) As we recently explained in *Johns-Manville,* any broad exceptions to the exclusive remedy rule "would undermine the underlying premise upon which the workers' compensation system is based. That system balances the advantage to the employer of immunity from liability at law against the detriment of relatively swift and certain compensation payments. Conversely, while the employee receives expeditious compensation, he surrenders his right to a potentially larger recovery in a common law action for the negligence or willful misconduct of his employer." (P. 474.)

There can be no question but that this delicate balance, carefully conceived and preserved for many years by the Legislature, is signifi-

cantly altered and disturbed when we hold that each of the thousands of employers in this state engaged in manufacturing for ultimate sale to the public loses the statutory immunity to any employee who is injured by defects in the goods or products manufactured. The employee has his historic remedy created by a well-reasoned "trade-off" of the benefits which we described in *Johns-Manville*. From the standpoint of sound public policy, no reason exists for judicially singling out for such special treatment employers engaged in manufacturing operations. If sections 3600 and 3601 are to be abolished, and the employee's remedy is no longer to be "exclusive," it is the authors of the sections, the Legislature, and not the courts, which should do the erasing.

I would affirm the judgment.

Mosk, J., concurred.

Respondent's petition for a rehearing was denied December 30, 1981. Kaus, J., did not participate therein. Richardson, J., was of the opinion that the petition should be granted.