In the Matter of the ESTATE OF Donald BLAKELY, Deceased, by Mary BLAKELY, His Wife, Special Administratrix and Individually, Plaintiff,

v.

ASBESTOS CORP., LTD., et al., Defendants.

No. LR–90–678.

United States District Court, E.D. Arkansas, W.D.

May 31, 1991.

Edward O. Moody, Little Rock, Ark., for plaintiff.

William L. Owen, Carol Lockard Worley, Little Rock, Ark., Floyd M. Thomas, Jr., El Dorado, Ark., for defendant.

## ORDER

EISELE, Chief Judge.

Pending before the Court in this asbestos diversity suit is defendant W.R. Grace & Co.—Conn.'s Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The complaint sounds in strict product liability, breaches of warranty and negligence. Plaintiff has responded and the parties have filed a round of replies. Defendant has also filed a Motion for Protective Order in which it requests a ruling by the Court on its motion to dismiss before providing certain items of discovery. For the reasons given the motion to dismiss will be denied.

## FACTS

Plaintiff's decedent was employed by defendant Grace in its Zonolite Expanding Plant in North Little Rock, Arkansas, in various capacities from 1963 to 1985. Paragraph IV of the Complaint reads in part as follows:

> Plaintiff will show that the Deceased . . . worked as an employee of a plant making asbestos products in and around the State of Arkansas where he was exposed to, on numerous occasions products produced and sold by Defendants and, in so doing, inhaled and was otherwise ex-posed to great quantities of asbestos fibers.

More specifically, plaintiff contends that her decedent was exposed to a fireproofing material manufactured by defendant which was sprayed on the ceiling of the North Little Rock plant by an outside contractor. Plaintiff has submitted the affidavit of Lawrence Cavender, an individual supervised by Mr. Blakely, who affirmed that Monokote, a product manufactured by Grace, was used to fireproof the ceilings of the plant in 1970 by an outside contractor named Robert Mosely. Exhibit 1 to Response to Motion. According to Mr. Cavender, Mr. Mosely was not provided with the Monokote by Grace but purchased it at Fisher Lime and Cement Company, also in North Little Rock. Plaintiff thus seeks to show that the decedent was harmed by defendant's defective product in a manner typical of asbestos-related injuries: through incidental exposure to the product at a jobsite, rather than regular use of defendant's product. Plaintiff views as happenstance or "coinciden[ce]" the single identity of decedent's employer and the manufacturer of the fireproofing material Monokote. Brief in Support of Response to Motion at 4 (unnumbered original).

Defendant's motion challenges the actual existence of subject matter jurisdiction rather than the sufficiency of the allegations of jurisdiction contained in the complaint. *See e.g. KVOS, Inc. v. Associated Press*, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936). In diversity actions such as this one the district court must apply the law of the forum state, here, Arkansas. Defendant's argument for dismissal can be summarized in a sentence: plaintiff's sole and exclusive remedy against Grace is provided in the state Worker's Compensation Act. The Act applies solely to claims for "injuries and death based upon accidents." Ark.Code Ann. § 11–9–103(b). And the Defendant points specifically to the following statutory language:

> The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive of all other rights and remedies of the employee, his legal rep-

resentative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer ... on account of the injury or death.

Ark.Code Ann. § 11–9–105(a). Nor, according to Defendant, does Arkansas recognize any form of alternative source of duty owed by a manufacturer to an individual who is also an employee (the so called "dual capacity" and "dual persona" doctrines).

## THE STANDARD ON 12(b)(1) MOTIONS TO DISMISS

■ The burden to prove subject matter jurisdiction always falls on the party asserting it. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Under a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction which challenges the actual basis for jurisdiction (such as the motion before the Court) or, which challenges the sufficiency of the jurisdictional allegations, the complaint is to be construed broadly and liberally in conformity with Rule 8(f). But where the motion challenges actual jurisdiction argumentative inferences in favor of the allegations in the complaint will not be drawn. C. Wright & A. Miller, 5A *Federal Practice and Procedure* § 1350, p. 218–19 (2d ed. 1990). Rule 8(f) advises that pleadings are to be construed so as to do "substantial justice."

## DISCUSSION

■ The legal issue before the Court is whether the exclusive language of the Workers' Compensation Act precludes an Arkansas court from recognizing legal obligations owed by employers to their employees when acting in distinctly different legal roles than that of employer. Put another way, does the Act immunize an employer against all liability in connection with the injury or death of an employee no matter how that injury or death occurred? This Court answers both questions in the negative.

### A. A Case of First Impression?

Defendant disputes plaintiff's assertion that the issue is one of first impression under Arkansas law. This dispute centers around an 18 year old decision, *Lewis v. Gardner Engineering Corp.*, 254 Ark. 17, 491 S.W.2d 778 (1973). In *Lewis*, the Arkansas Supreme Court affirmed summary judgment granted in favor of one member corporation in a two party joint venture against an employee of the joint venture. The joint venture had been formed for the purpose of constructing a lock and dam on the Arkansas River. Ralph Lewis, appellant, was injured by a steel piling which came unhitched from a pile driver manufactured by Gardner Engineering.

The Court applied the Arkansas rule of joint ventures, which does not treat the joint venture as a distinct legal entity apart from its component corporations (as compared with partnerships). *Smith v. Rodgers*, 251 Ark. 994, 477 S.W.2d 831 (1972). Thus, "a joint venturer who is also an employer is immune from tort liability under the workman's compensation law." *Lewis*, 491 S.W.2d at 779. In summary fashion the court disposed of appellants' claim of individual liability: "It is nothing more than a coincidence that Gardner, one of the joint venturers, happens to have manufactured the [defective pile] hoist." *Id.* 491 S.W.2d at 780. And as for appellants' claim that the exclusivity language should not provide blanket immunity to Gardner, the court simply "found no merit in the argument." *Id.*

This relatively short majority opinion prompted a relatively long dissent by Justice Fogelman. He noted the majority's failure to squarely address the possibility, suggested in *Smith v. Rodgers*, that an employer may have liability in a capacity other than that of employer. The dissent outlined in detail the factual circumstances surrounding the distribution and use of the hoist by the joint venture. For Justice Fogelman, the case presented an opportunity to consider and apply the "dual capacity" doctrine which asks whether an employer's "second function generates obligations unrelated to those flowing from the

first, that of employer." *Id.* 491 S.W.2d at 782 (Fogelman, J., dissenting and quoting 2 Larson, *Workmen's Compensation Law,* § 72.80).

The Court concludes that *Lewis* does not control the present case. That case focussed narrowly on the unitary legal status of joint ventures and their component parts. Yet the court stopped short of an analysis of the differing legal personalities which an entity may have, thus dodging the more difficult problem of the status of employers who act as third-party tortfeasors.

While defendant here properly points to recent Arkansas Supreme Court cases reaffirming the general principle of the exclusivity of the Workers' Compensation Act, the facts of these cases do not involve products liability claims and speak in the most general of terms. *See e.g. Roy Horton Tomato Co. v. Home Ins. Co.,* 683 F.Supp. 714 (E.D.Ark.1988) (employee's federal claim of fraudulent cancellation of worker's compensation insurance policy barred by Workers' Compensation Act's exclusive remedy language); *Smith v. Rockwood Ins. Co.,* 684 F.Supp. 607 (E.D.Ark. 1988 (similar)); *Fore v. Circuit Court of Izard County,* 727 S.W.2d 840 (Ark.1987) (motion to dismiss in negligence suit against employer's supervisor improperly denied where no allegation of intentional or willful act was presented). The Arkansas Supreme Court has never definitively addressed and analyzed the issues raised by a dual theory of employer liability in a product liability case such as this. To this task the Court, acting as it believes the Arkansas Supreme Court would, now turns.

### B. Theories of Dual Liability

■ The parties argue either for the underlying validity of, or the disgraced state of, the so called "dual capacity" doctrine. Defendant has the better of this contest. As Professor Larson *supra* at § 72.81(c) explains, this doctrine had a limited popularity, primarily in California and Ohio, for a span of perhaps ten years from 1973 to 1983, after which California abolished it and the Ohio Supreme Court abandoned it

for a more limited "dual persona" doctrine. *See* Assembly Bill No. 684 sec. 6 amending § 3602 of the Labor Code (1982); *Freese v. Consolidated Rail Corp.,* 4 Ohio St.3d 5, 445 N.E.2d 1110 (Ohio 1984). In its most extreme expression the California Supreme Court declared that the workman's compensation law was an exclusive remedy for work related injuries *only* when the duty arose solely from the employment relationship. *Bell v. Industrial Vangas, Inc.,* 30 Cal.3d 268, 179 Cal.Rptr. 30, 637 P.2d 266 (1981).

Both also cite to Professor Larson's preferred and more limited doctrine of "dual persona":

> An employer may become a third person, vulnerable to tort suit by an employee, if and only if he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.

*Id.* at § 72.81. Professor Larson's treatise advocates a clear preference for the dual persona doctrine and expresses gratification at the burgeoning number of states which have employed it as an analytical tool. Ten states have expressly adopted the dual persona test in the context of product liability suits by employees: Illinois, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, New York, North Dakota, Ohio and Wisconsin. *Id.* at § 72.83. The trend can be expected to continue. But courts seem nearly unanimous in holding that where an employer's product was used by the employee in the course of his/her work it matters not whether the employer was the manufacturer, modifier, installer or distributor, there will be no third-party liability. This explains and also limits the scope of the holding in *Lewis.*

Here, however, we have facts which conform unusually well to the requirement of a separate legal identity for decedent's employer. An industrial fireproofing product is offered for sale by a commercial supplier of fireproofing material. An outside contractor is retained by Grace to insulate the ceilings of its North Little Rock factory. The outside contractor chooses what he

believes to be a suitable fireproofing product. Decedent dies of lung cancer, allegedly caused by exposure to several airborne asbestos products in his 22 year career and his wife files suit against, among others, the manufacturer of the fireproofing material. And unlike many cases in which the product alleged to have been defective was actually used by the worker in the course of his/her employ, decedent here had nothing whatever to do with the fireproofing operation performed by Mr. Mosley; he was an innocent bystander.

That Grace was both employer and manufacturer of Monokote is a coincidence which does not braid the two disparate legal relationships together. As employer qua employer, plaintiff's exclusive remedy is contained in the Arkansas Workers' Compensation law. But as employer qua asbestos manufacturer, a separate legal duty was owed to decedent notwithstanding his employee status.

### C. Legislative History

The Court draws support for its conclusion from a reasonable reading of Arkansas' history of compensation to workers for job-related injuries and from a recent Eighth Circuit opinion which interprets the "exclusive remedy" language in Arkansas' workers' compensation law to circumscribe an employers' immunity to tort liability.

Before the enactment of Arkansas' first Workers' Compensation Act in 1940 an injured worker or decedent's survivor could only file a common law tort action against the employer. The difficult burden of proving negligence oftentimes resulted in judgment for defendant. The common law remedy did little to assist a disabled worker during the period before trial. From the employer's perspective, the risk of suit at any time with potentially disastrous financial consequences was also unacceptable.

In 1938, the Arkansas Constitution was amended to empower the legislature to enact a worker's compensation scheme. This the legislature did in its next session. But as Justice Fogelman observed in *Lewis:*

It was never intended that our workman's compensation statutes should immunize one who happens to be an employer from any and all liability to one who happens to be his employee. Amendment 26 of our Constitution only authorized the General Assembly to enact laws prescribing the amount of compensation to be paid by employers for injuries to employees. It prohibits any other limitation on the amount to be recovered for injuries. This certainly means that the General Assembly can only prescribe limitations relating to injuries arising out of the employer-employee relationship

\* \* \* \* \* \*

Liability under the act is based not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of the employment.

*Id.* 491 S.W.2d at 783–84 (citations omitted). Although this dissenting view has never been vindicated by later Arkansas caselaw, neither has this reading of the history and purpose of the Act ever been challenged. The Arkansas courts have simply not had occasion to revisit the issues in any comprehensive manner.

In *Wilson v. Beloit Corp.*, 869 F.2d 1162 (8th Cir.1989), plaintiff was injured by a machine at his place of employ, IPC Corporation. Plaintiff sued Beloit, the manufacturer, but some time after the suit was filed the component parts of the offending machine were lost by IPC. Plaintiff sued his employer alleging that the "damage" to his tort claim against the manufacturer was deliberately caused by IPC. The panel concluded that since Arkansas' Workers' Compensation Act did not provide a right or remedy on account of the collateral injury alleged to have been sustained, the Arkansas Supreme Court would permit a suit against the employer notwithstanding § 11–9–105(a).

The Court is similarly persuaded that were the Arkansas Supreme Court to be faced today with the factual scenario presented herein it would also conclude that the dual persona test of a separate legal entity is satisfied by Grace's role as

asbestos manufacturer. This conclusion is buttressed from several directions. First, there has been an unmistakable and growing swell of support for the dual persona rule among the states. This trend may be traced to Professor Larson's work on the subject. Second, Arkansas has never specifically addressed and dealt with the doctrine. And when it does reach the issue, Arkansas, like the states that did not adopt the dual capacity doctrine in the seventies, will be in the enviable position of having safely witnessed the demise of the overbroad dual capacity rule and the successful application of the dual persona rule. Like this Court, the Eighth Circuit in *Wilson* has also indicated its confidence in a less rigid analysis of the blanket immunity for employers by the Arkansas courts. Finally, the logic of the legislative history of Arkansas' worker's compensation enactments, and the Arkansas constitutional limitations on such legislative power, also point to the adoption of the dual persona rule as a matter of constitutional and statutory construction.

The motion to dismiss will be denied.

IT IS THEREFORE ORDERED that defendant W.R. Grace & Co.—Conn.'s Motion to Dismiss be, and it is hereby DENIED.

IT IS FURTHER ORDERED that defendant W.R. Grace & Co.—Conn.'s Motion for Protective Order be, and it is hereby MOOT.