*Ashtabula, Geauga, Lake, Portage
and Trumbull Counties
Hon. Judith A. Christley, P.J., Hon. Donald R. Ford
Hon. Joseph E. Mahoney*

---

## McNeal
## v.
## Bil-Mar Foods of Ohio, Inc.
### [Cite as 4 AOA 463]

*Case No. 89-P-2080*
*Portage County, (11th)*
*Decided June 1, 1990*

*N. W. Sandvoss, 228 West Main Street, P. O. Box 248, Ravenna, Ohio 44266, for Plaintiffs-Appellants.*

*Orville L. Reed, William D. Dowling, 50 South Main Street, P. O. Box 1500, Akron, Ohio 44309, for Defendants-Appellees.*

FORD, J.

Appellant, Don C. McNeal Jr., was employed by Manpower, Inc. Manpower provided temporary help to individuals and companies by dispatching, upon request, skilled or unskilled personnel to the premises of its clients for whatever services were requested. The dispatched employees received instructions from the customer as to what tasks were to be performed and were supervised solely by the customer's personnel. For its help in providing workers, Manpower was paid a fixed rate by the customer for each work hour provided by Manpower employees. In turn, Manpower paid its employees itself, at a lesser rate than remunerated by the client. A portion of the surplus monies remitted by the clients to Manpower was used to pay all workers' compensation premiums and unemployment compensation premiums for the protections of its employees.

On February 10, 1987, appellant was assigned by Manpower to work for appellee, Bil-Mar Foods of Ohio, Inc. Appellant was operating a turkey deboning machine when he injured his right hand. Appellant filed a worker's compensation claim against Manpower which was allowed, in claim number 934906-22. Although the administrative decision is not in the record, apparently, the Industrial Commission found that Manpower was the appellant's employer.

On March 11, 1988, appellant, along with his wife Bernadette, filed on complaint against appellee and Bil-Mar Foods, a Michigan corporation which manufactured the turkey deboner. This complaint alleged that appellant, an employee of Manpower, was injured at appellee's place of employment, in violation of the frequenter statute, R. C. 4101.11. Appellant, Bernadette McNeal, also alleged a loss of consortium based on injuries suffered by her husband. Over the next nine months, appellants amended their complaint twice, to include additional counts and parties, alleging that Bil-Mar, Inc, a Michigan corporation allied with appellee, was strictly liable for the negligent construction of the turkey deboner, and also claiming that appellee committed an intentional tort by failing to place a safety guard on the machine when they knew, to a substantial certainty, that the failure to include such a guard would cause injury.

Appellees filed a motion for summary judgment on June 30, 1988, subsequent to appellant's first amended complaint. Appellants responded to appellee's motion for summary judgment on August 22, 1988. After the filing of the second amended complaint, appellants also filed an amended brief in opposition to appellee's motion for summary judgments. The trial court granted

appellee's motion for summary judgment on April 27, 1989 and appellants now timely appeal, raising the following assignment of error:

"The trial court erred as a matter of law in granting appellees' motion for summary judgment."

Appellants' declination of a single assignment of error is somewhat misleading as the assignment posits a number of of sub-issues under the rubric of their contention. The gist of appellants' arguments is that the trial court erred in granting appellees' motion for summary judgment on the grounds that appellees were immune from suit under the Workers' Compensation Act. The trial court based its decision on the case on *Daniels* v. *MacGregor Co.* (1965), 2 Ohio St. 2d 89, which is strikingly on point.

In *Daniels, supra,* appellant Daniels was also an employee of Manpower, assigned to work for appellee MacGregor Company. As in the case *sub judice,* MacGregor paid Manpower the correct invoice amount for each employee assigned, from which Manpower would pay the employee's salary, workers' compensation and unemployment compensation premiums, and retain the balance as a fee for its services. Both Manpower and MacGregor made semiannual payments to the State Insurance Fund, as required by R.C. 4123.35. Daniels was injured during the course of his employment with MacGregor. "As a result of a claim made on behalf of plaintiff as an employee of Manpower ***, (Daniels) was receiving compensation benefits from the State Workmen's Compensation Fund." *Daniels,* at 91.

In addition to receiving these funds in compensation, Daniels filed a suit against MacGregor Company, attempting to recover damages for personal injuries suffered while working for MacGregor Company. The Ohio Supreme Court held, however, that Daniels was barred from suing in tort by R.C. 4123.74, stating:

"Where an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that the customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; and, where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer.***" (Citations omitted.) *Daniels,* at the syllabus.

The Ohio Supreme Court, in determining *Daniels,* borrowed from the doctrine of *respondeat superior.* See, *e.,g. Bobik* v. *Industrial Commission* (1946), 146 Ohio St. 187, cited in *Daniels,* at 93. As in the *respondeat superior* context, the court found that the right to control the actions of the employee was the dispositive fact in analysis of which entity employed the employee. (The *Daniels* court did not expressly examine the question of the *res judicata* effect, if any, of the Industrial Commission's finding that Daniels was an employee of Manpower for payment of Workers' Compensation benefits.)

In 1978, the court, in *Campbell* v. *Central Terminal Warehouse* (1978), 56 Ohio St. 2d 173, stated, in response to a request that *Daniels* be overruled, that "[t]he holding [of *Daniels*] has remained unchanged for approximately 13 years and it is significant that the General Assembly has chosen not to alter the result ***." *Campbell, supra,* at 175. As *Campbell* explicated this scenario:

"The appellant was clearly 'in the service of' Central. He was referred by Hour Man to perform tasks *as required by Central.* Moreover, there existed an implied contract of hire between Central and appellant, whereby appellant in effect authorized Hour Man to offer his services for hire, and Central, by approving the referral, accepted appellant's offer. * * * Although Central did nor directly pay appellant, Central did pay Hour Man a certain sum which covered the reimbursement of appellant for his services." *Id.* at 175-176 (Emphasis in the original.)

The *Campbell* court concluded that, under these facts, appellant was an employee of Central at the time of the injury and, consequently, precluded appellant from bringing suit against the company.

In footnote one of *Campbell,* the court stated:

"It should be noted that although Central did not make any direct payments into the state insurance fund on behalf of appellant, Central was in compliance with the provisions of R.C. 4123.35 requiring every employer to pay into the fund the amount of premium fixed by the Industrial Commission.

"Also noteworthy, is the fact that part of the payments made by Central to Hour Man for temporary help took into consideration the contributions Hour Man had made into the

Workers' Compensation Fund on behalf of appellant."

Similarly, the case *sub judice*, although the trial court made no express findings of fact as to appellee's compliance with R.C. 4123.35, appellee attached to its motion for summary judgment material of evidential quality indicating that the company was indeed in compliance with the relevant statutory provisions.

Appellants, in this case, attempt to distinguish this factual scenario from *Daniels* and *Campbell* on a number of grounds. First, appellants maintain that the Industrial Commission has already determined that appellant was an employee of Manpower. Appellants assert that this administrative determination must be accepted under the doctrine of *res judicata. Scott* v. *East Cleveland* (1984), 16 Ohio App. 3d 429. Examination of the trial court record indicates that appellants timely raised this issue. While this court grants that administrative agency decisions are entitled to protection under the doctrine of *res judicata* generally, we note that the Ohio Supreme Court tacitly overruled appellants' argument in cases like *Daniels*, where the appellant also claimed the benefit of an administrative finding that he was a Manpower employee. Although the court has not propounded a rationale that would account for this apparent legal inconsistency, this court is constrained to follow the precedent set fort in *Daniels* and *Campbell* and conclude that as a matter of law, appellant was an employee of appellee at the time of the injury.

Appellants next claim that appellant was not on appellee's premises as an employee at all, but rather as a "frequenter." R.C. 4101.01(E) describes a frequenter as "every person, *other than an employee*, who may go in or be in a place of employment under circumstances which render him other than a trespasser." (Emphasis added.) Appellants argue that appellee had a duty, to appellant as a frequenter, to provide a safe work premises under R.C. 4101.11 (Duty of employer to protect employees and frequenters).

Appellants' arguments are flawed on two grounds. First under the *Daniels* rule, appellant is an employee *per se*. Secondly, even if there were some debate as to appellant's status, examination of the applicable case law would reveal that appellant should not be classified as a frequenter. As *Willis* v. *Eckert Packing Co.* (1969), 21 Ohio App. 2d 117 observed, the term frequenter, " by its own definition, alludes to the general public" and specifically, business invitees. *Willis, supra*, at 121. Examination of the record indicates that appellant was on appellee's premises, not as a member of the general public or even as a business invitee, but instead, as an employee. This argument is without merit.

Appellants next contend that the doctrine of promissory estoppel precludes this court from finding that appellant was an employee of appellee. Appellants direct this court's attention to the employee handbook, provided to appellant by appellee, and properly included in the court record as an exhibit to an affidavit assimilated in appellant's brief in opposition to summary judgment. This handbook states, in a number of places, that appellant was an employee of Manpower. This handbook, assert appellants, also contained representations that if the Manpower temporaries followed the appellee's rules and regulations, they would increase their chances of becoming employees of appellee. Appellants contend that the appellant relied on these representations in his work performance, and cite *Jones* v. *East Center for Community Mental Health Inc.* 1984, 19 Ohio App. 3d 19, paragraph four of the syllabus, for the proposition that:

" A promise (or a series of promissory representations) contained in an employment manual which the employer should reasonably expect to induce action or forbearance by its employees, and which does so induce action or forbearance on their part, is binding if injustice can be avoided only by enforcing that which the manual promises."

For appellant's argument to be cognizable under the doctrine of promissory estoppel, the court would have to find that appellee promised appellant that he would be an employee of Manpower, and that appellant accepted Manpower's referral to appellee relying on this promise, to his detriment. This argument is fatuous as a matter of common sense. While appellants could conceivably maintain that appellant took the referral to appellee's business on reliance of other factors in the handbook (such as representations that appellant, if he performed well, would have an improved chance at a permanent position with appellee), the record does not support, nor does logic allow the assertion that the reason appellant went to work for appellee was because he was promised that he would remain an employee of the temporary agency throughout his employment. This argument is without merit, particularly given appellants' apparent desire to attain permanent employment with appellee.

Appellants' last argument is that the trial court erred in granting appellees' summary judgment motion because of factual issues remaining as to whether appellees committed an intentional tort. Examination of the record reveals that the issue of the intentional tort, pursuant to R.C. 4121.80, was raised in appellants' second amended complaint. Subsequent to the filing of this complaint, appellants filed an amended brief in opposition to appellees' motion for summary judgment. This amended brief contained no reference whatsoever to any question of intentional torts, nor any submissions of evidential quality which would present a factual issue of an intentional tort.

Appellants' failure to provide evidence supporting their claim of an intentional tort is particularly harmful, given the high quantum of evidence required, by *Van Fossen v. Babcock & Wilcox Co.*(1988), 36 Ohio St. 3d 100, to prove the existence of the tort in the courts of this state. *Van Fossen, supra*, requires that the employer possess knowledge of the existence of a dangerous operation, that the employer know to a "substantial certainty" that the dangerous operation will cause an injury, and that the employer requires the employees to continue to perform the dangerous operations in spite of the risk. *Id.* at the syllabus. The record, as noted, indicates that appellants presented no evidence that demonstrate that appellee knew that the operation of turkey deboner, without the safety guard, was substantially certain to cause injury. Consequently, as a matter of law, appellants cannot set forth a properly cognizable claim of an intentional tort.

The conclusion of our analysis of appellants' claim of an intentional tort brings this court to the end of examination of the arguments raised by appellants in their brief. However, this court's scrutiny of the trial court record indicates that the issue of strict liability was left untreated by the trial court when it granted appellee's motion for summary judgment. Appellants have not set forward any arguments on the issue of strict liability before this court, and App. R. 12(A) allows this court to disregard errors not specifically pointed out in the record and separately argued in the briefs. However, appellants' argument is one which merits comment, and we will exercise our discretion to do so in this case.

Appellants' argument, simply put, is that Bil-Mar, Inc. (the Michigan corporation named in the amended complaint) should be held strictly liable for alleged design flaws and faulty construction of the turkey deboner. This argument is very similar to *Schump* v. *Firestone Tire & Rubber Co.* (1989), 44 Ohio St. 3d 148. In *Schump, supra*, the Ohio Supreme court stated:

"Where an employer manufactures a product for public sale and for its own use, and an employee is injured while using the product within the scope of his employment, the employee may not maintain a products liability suit against his employer under the dual-capacity doctrine." *Id.* at the syllabus. See also, *Hillman* v. *McCaughtry* (Sept. 15, 1989), Trumbull App. No. 4045, unreported, at 6.

The import of the *Schump* decision is that it essentially eliminated cases in which the employer was being sued both in his employment capacity and in his capacity as a manufacturer of a company product. Consequently, under the *Schump* doctrine, appellant's argument is without merit.

Therefore, for the reasons delineated in this opinion, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and MAHONEY, J., concur.