[Cite as *Kinderdine v. Mahoning Cty. Bd. of Dev. Disabilities*, 2016-Ohio-4815.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| TRACY KINDERDINE,<br>ADMINISTRATRIX OF ESTATE OF<br>NATHAN KINDERDINE | ) ) ) | |
| | ) | CASE NOS. 14 MA 0174 |
| PLAINTIFFS-APPELLEES/<br>PLAINTIFFS-APPELLANTS | ) ) | 14 MA 0177<br>14 MA 0180<br>14 MA 0181 |
| VS. | ) ) | |
| | ) | OPINION |
| MAHONING COUNTY BOARD OF<br>DEVELOPMENTAL DISABILITIES, et. al. | ) ) ) | |
| and | ) ) | |
| MAHONING COUNTY EDUCATIONAL<br>SERVICE CENTER, et. al. | ) ) ) | |
| DEFENDANTS-APPELLANTS | ) ) | |
| and | ) ) | |
| CALLOS STAFFING COMPANY, LLC,<br>et. al. | ) ) ) | |
| and | ) ) | |
| BREANNA ALLEMAN | ) ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeals from
Court of Common Pleas,
Mahoning County, Ohio
Case Nos. 2011 CV 2865 and
2014 CV 404

JUDGMENT:     Appeal Nos. 2014 MA 0174 and 0180,
Reversed and Modified.
Appeal Nos. 2014 MA 0177 and 0181,

Affirmed.

APPEARANCES:

For Plaintiffs-Appellees/             Attorney W. Bashein
Plaintiffs-Appellants                  Attorney Anthony Palombo
Attorney Paul Flowers
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio 44113

For Defendant-Appellee, Callos, et al.      Attorney Audrey Bentz
9200 South Hills Blvd., Suite 300
Cleveland, Ohio 44147

For Defendant-Appellant, Mahoning     Attorney Todd Raskin
County Board of Developmental       Attorney Carl Cormany
Disabilities, et. al.                  Attorney Frank Scialdone
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139

For Defendant-Appellant,            Attorney Todd Gray
Mahoning County Educational Service 1375 East Ninth Street
Center, et. al.                   Suite 1600
Cleveland, Ohio 44114

For Defendant-Appellee,          Attorney Matthew Markling
Breanna Alleman              1894 North Cleveland-Massillon Road
Akron, Ohio 44333

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: June 30, 2016

DeGENARO, J.

{¶1} These four appeals share the same tragic factual basis, the drowning of a child. Tracy Kinderdine, mother of Nathan Kinderdine (deceased) is the plaintiff, along with her husband, children and estate of the deceased, in this action instituted in the Mahoning County Court of Common Pleas against several defendants as the result of Nathan's death. The procedural disposition is varied and will be outlined by appeal case number after the substantive facts are detailed below.

## Factual Background

{¶2} Nathan was a seven year old autistic student who attended the Mahoning County Summer Enrichment Program at the Leonard Kirtz School (Kirtz) for students with developmental disabilities. The Mahoning County Board of Developmental Disabilities (BDD) owns, maintains, and controls Kirtz, and awarded a contract to the Mahoning County Educational Service Center (ESC) to operate this program at Kirtz. ESC contracted with Callos Staffing Company, LLC, et. al. to perform payroll and other administrative functions for Kirtz employees after they were hired by ESC.

{¶3} Nathan was diagnosed with autism, and because of his tendency to wander off, he was assigned an aide employed by ESC to assist him while he attended the summer program at Kirtz. The aide's responsibilities generally included assisting students in the classroom, gym, lunchroom, and pool. On the date Nathan drowned, his aide arrived to work at approximately 11:30 a.m. and joined the students in the cafeteria, at which point she took several students, including Nathan, to the gym. On this day, Nathan's class had ten students and was staffed by five adults, two of which were assigned to specific students. Nathan's aide held his hand until he was approximately 1/3 of the distance into the gym before letting go. She then turned her attention to assisting other students in a wagon that were attempting to get through the gym doorway; thereafter she was unable to locate Nathan.

{¶4} The Kinderdines allege that Nathan exited the gym through the door separating the gym and the boy's locker room and proceeded through a second door connecting the locker room with the pool area. They assert that Nathan was able to

get through this second door due to a faulty door and/or latch mechanism on that door. They further contend that Nathan was then able to get into the swimming pool because the motorized pool cover had not been placed over the pool after the last swimming session that morning.

{¶5} A custodian was in the hallway near the gym when he heard that people were looking for a little boy. He went into the boys' locker room next to the gym and checked the door to the swimming pool that was closed and locked. He unlocked and opened the door, seeing that the pool cover was not closed, and located Nathan underwater in the pool. He jumped into the pool and lifted Nathan out of the water and gave him to another staff member who rushed Nathan to the nurses' office. Resuscitation efforts were attempted unsuccessfully and Nathan was pronounced dead shortly thereafter.

## Procedural History

{¶6} These appeals arise from separate complaints in which the Kinderdines filed claims for wrongful death and survivorship against two political subdivisions, related private entities and multiple individuals. The legal capacity in which the Kinderdines sought to impose liability is noted below.

### Political Subdivision and Employees

{¶7} Appeal No. 2014 MA 0174 involves the following Defendants-Appellants, collectively referred to as BDD: Mahoning County Board of Developmental Disabilities; Larry Duck, Frank Dietz, Robert Wilson, Peter Packard III, Robert Stewart, Elizabeth Wollitz, Patricia Persohn, Warren Chapella, and Kevin Reardon in their capacities as employees of BDD acting in the scope and performance of their employment. BDD filed answers that, inter alia, denied the allegations in the complaints and asserted affirmative defenses.

{¶8} Appeal No. 2014 MA 0180 involves the following Defendants-Appellants, collectively referred to as ESC: Mahoning County Educational Service Center; Jennifer Whittemore, Jennifer Hartman, Richard Denamen, Cynthia Cairns, Ronald Iarussi, Marlene Shippoli, Megan Bowser, Betsy Sheldon, John Bole, and

Autumn James in their capacities as employees of ESC acting in the scope and performance of their employment. ESC filed answers that, inter alia, denied the allegations in the complaints and asserted affirmative defenses.

{¶9} BDD and ESC filed motions for summary judgment asserting governmental immunity on behalf of each political subdivision and their respective employees. The trial court denied both motions, finding a statutory exception regarding physical defects on or within the grounds of buildings used in connection with the performance of a governmental function reinstated liability. Both entities appealed on their behalf and their employees.

Callos Entities

{¶10} Appeal No. 2014 MA 0181 involves the following Defendants-Appellees collectively referred to as Callos: Callos Staffing Company, LLC, The Callos Companies Inc., Callos Professional Employment, Inc., Callos Contract Services, LLC, Callos Management Succession Team, Inc., Callos Management Co. Inc., and Callos Medical Staffing. Callos filed a motion for summary judgment invoking the loaned servant doctrine, contending Callos was not vicariously liable for any personnel it placed at Kirtz pursuant to a contract with ESC as Callos did not supervise and control the daily activities of the employees. The trial court granted summary judgment on that basis and the Kinderdines appealed.

Alleman

{¶11} Appeal No. 2014 MA 0177 involves Defendant-Appellee, Breanna Alleman, a lifeguard at Kirtz, whom all parties concede was not present the date of the drowning. However, the Kinderdines contend that she had been charged with supervising the pool, ensuring that special needs children were unable to access the water, and was responsible for training the replacement lifeguard on duty the date of the drowning. They assert that her failure to do so was reckless, willful and wanton. Without naming them as defendants in this complaint, the Kinderdines alleged that Callos and ESC were also liable for her conduct, actions, and inaction. In addition to an answer, Alleman filed a motion for judgment on the pleadings which the trial court

granted, and the Kinderdines appealed.

## Sovereign Immunity

**{¶12}** In its sole assignment of error, BDD asserts:

Because all of the MCBDD Defendants are entitled to statutory immunity with regard to the Plaintiff's claims, the lower court erred by failing to grant the MCBDD Defendants' Motion for Summary Judgment.

**{¶13}** In its two assignments of error, ESC asserts:

The trial court erred in holding that the exception to immunity in R.C. 2744.02(B)(4) applied to the Mahoning County Educational Service Center.

In the alternative, even assuming arguendo that the trial court was correct, it erred in finding that immunity was not restored under R.C. 2744.03.

**{¶14}** Review of a trial court's summary judgment decision is de novo. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5. Summary judgment is proper if, construing the evidence in favor of the non-moving party there are no genuine issues of material facts; the movant is entitled to judgment as a matter of law; and the evidence is such that reasonable minds can come to but one conclusion which is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 1996-Ohio-107, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

**{¶15}** BDD and ESC filed motions for summary judgment asserting that pursuant to the Political Subdivision Tort Liability Act, both entities and their

employees are immune from liability. Specifically, that they are immune because they were performing a governmental function. R.C. 2744.02(A)(1).

{¶16} The trial court found that both political subdivisions were performing a governmental function, but that the following exception applied: "[P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function[.]" R.C. 2744.02(B)(4). The trial court finally concluded that R.C. 2744.03(A)(5) did not restore immunity.

> Whether a political subdivision is entitled to immunity is analyzed using a three-tiered process. *Green Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000). Under the first tier, R.C. 2744.02(A)(1) sets out the general rule that political subdivisions are not liable in damages. *Id.* at 556–557, 733 N.E.2d 1141. Under the second tier, the court must determine whether any of the exceptions to immunity set out in R.C. 2744.02(B) apply. *Id.* at 557, 733 N.E.2d 1141. Finally, under the third tier, if the court finds that any of R.C. 2744.02(B)'s exceptions apply, it must consider R.C. 2744.03, which provides defenses and immunities to liability. *Id.*

*Roberts v. Switzerland of Ohio Local School Dist.* 2014-Ohio-78, 7 N.E.3d 526, ¶17 (7th Dist.).

{¶17} "Immunity is a doctrine that provides a complete defense to a tort action. By asserting an immunity defense, the defendant does not allege that there was no negligence. The defendant is asserting that it is protected from liability for negligence by reason of R.C. Chapter 2744." *Rondy v. Richland Newhope Industries, Inc.,* 5th Dist. No. 15CA45, 2016-Ohio-118, ¶ 27. BDD, ESC and the Kinderdines agree the first tier is met.

{¶18} Turning to the second tier in the analysis this Court must determine whether any of the exceptions to immunity apply:

R.C. 2744.02(B) was amended on April 9, 2003. The 2003 amendment to R.C. 2744.02(B)(4) added the language "and is due to physical defects within or on the grounds of" after "that is caused by the negligence of their employees and that occurs within or on the grounds of." Other than this addition, the statute remained the same. The statute was changed to limit liability for negligence that is due to physical defects within or on the grounds that are used in connection with a governmental function. *Aratari v. Leetonia Exempt Village School Dist.*, 7th Dist. No. 06–CO–11, 2007-Ohio-1567, 2007 WL 969402, ¶ 30.

*Roberts*, ¶ 20

**{¶19}** R.C. 2744.02(B)(4) requires two elements for the exception to apply; a negligent act and a physical defect within or on the grounds of the political subdivision. *DeMartino v. Poland Loc. School Dist.,* 7th Dist. No. 10 MA 19, 2011-Ohio-1466, ¶ 34. "R.C. 2744.02(B)(4) requires the injuries at issue to be caused *both* by a political-subdivision employee's negligence *and* a physical defect on the grounds." *Parmertor v. Chardon Local Schools,* 11th Dist. No. 2014-L-129, 2014-L-133, 2016-Ohio-761, ¶ 16 (emphasis in original).

**{¶20}** The phrase physical defect is not statutorily defined. The Sixth District defined physical defect as "a perceivable imperfection that diminishes the worth or utility of the object at issue." *Hamrick v. Bryan City School Dist.* 6th Dist. No. WM-10-014, 2011-Ohio-2572, ¶ 28. Here the Kinderdines allege two physical defects which caused or contributed to the death of their son: the motorized cover was not placed over the pool and the faulty latch on the locker room door leading into the pool area.

**{¶21}** The Eight District held that the failure to use an available safety device does not constitute a physical defect. *Duncan v. Cuyahoga Community College*, 8th Dist. No. 100121, 2014-Ohio-835. The same applies here as there was no testimony by any party that the cover was in any defective condition.

**{¶22}** The remaining alleged physical defect is the faulty door latch leading from the locker room into the pool area. ESC provides little argument, briefly

contending that as BDD owns and maintains the property ESC should be awarded summary judgment on this basis alone. BDD argues that the Kinderdines did not demonstrate Nathan's death was caused by the negligence of a specific political subdivision employee, nor due to a physical defect. The former argument aside, the record is replete with evidence that the door latch stuck and/or did not work properly. However the door did not cause Nathan's death; he was not hit or trapped by the door.   Therefore, this exception does not lift the grant of immunity set forth in  R.C. 2744.02(A)(1).

**{¶23}**  Even if we were to conclude the exception found in R.C. 2744.02(B)(4) is present, under the third tier of the analysis immunity would be restored. "The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(5).

> Wanton, willful and/or reckless conduct is conduct that is a degree greater than negligence. *Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 392, 2008–Ohio–2567, 889 N.E.2d 521, ¶ 37; *Wagner v. Heavlin* (2000), 136 Ohio App.3d 719, 730–731, 737 N.E.2d 989. Specifically, wanton misconduct is "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." *Id.* Willful conduct involves a more positive mental state than wanton misconduct and implies intent. *Id.* at 731, 737 N.E.2d 989. That intention relates to the conduct, not the result. *Id.* It is an intentional deviation from a clear duty or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. Reckless conduct is conduct that was committed knowing the facts or having reason to

know the facts and which leads a reasonable person to know that his conduct will in all probability result in injury. *Rankin* at ¶ 37.

Typically, issues regarding recklessness, wantonness or willfulness are questions for the jury to decide. However, the standard of proof for such conduct is high. *Adams v. Ward*, 7th Dist. 09 MA 25, 2010–Ohio–4851, ¶ 27. When the facts presented show that reasonable minds could not conclude that the conduct at issue meets that high standard, a court may determine that such conduct is not willful, wanton or reckless as a matter of law. *Id*

*DeMartino* at ¶48-49.

**{¶24}** The evidence presented by the Kinderdines does not meet their burden of proof: that BDD, ESC, and their employees acted in a willful, wanton or reckless manner. Given the high standard set by the statute as this court held in *DeMartino*, as a matter of law the trial court erred by failing to find immunity was restored.

**{¶25}** Construed in a light most favorable to the Kinderdines as the non-moving party, the tragic facts of this case may meet a negligence standard of proof. But they do not meet the significantly higher bar set by the General Assembly with the use of the statutory terms willful, reckless and wanton. Thus, even if we were to find that an exception to sovereign immunity was present, we would also be forced to recognize that immunity would be restored.

**{¶26}** Accordingly, BDD and ESC's assignments of error are meritorious. The trial court erred by denying summary judgment. Sovereign immunity precludes the Kinderdines' lawsuit against BDD, ESC and their employees as they were acting within the scope of their employment.

### Loaned Servant Doctrine

**{¶27}** In their sole assignment of error against Callos, the Kinderdines assert:

The trial judge erred, as a matter of law, by granting summary judgment in favor of Defendant-Appellees, Callos Staffing Company, L.L.C., et al.

**{¶28}** Callos counters the Kinderdines' assigned error by contending the trial court's decision should be affirmed because the employees were loaned servants of ESC.

The loaned servant rule provides that where one person lends his servant to another for a particular employment, within the context of that employment, the servant is treated as if he were the servant of the one to whom he was lent. *Halkias v. Wilkoff Co.*, 141 Ohio St. 139, 151, 47 N.E.2d 199 (1942). Furthermore, the loaned servant relationship is not affected by the fact that the party who lent the servant continues to pay him as long as the "borrowing" party controls the servant while he accomplishes the task he was sent to perform. *Id.* at 153; see also Restatement of the Law 2d, Agency (1958) 501-503, § 227, illustration five.

*Lawson v. May Dept. Store*, 7th Dist. No. 00 CA 191, 2001-Ohio-3453, *2 (internal citations omitted).

**{¶29}** The Fifth District has articulated a test to evaluate this status: "whether while performing the task, the employee continues to be liable to the direction and control of the general employer, or becomes subject to that of the person to whom he is lent." *Carrico v. Drake Construction*, 5th Dist. No. 2005 CA 00201, 2006-Ohio-3138, ¶ 24. In addition to *Carrico,* four of our sister districts that have considered the doctrine have focused on the daily control of tasks in the workplace rather than administrative matters. See *McNeal v. Bil-Mar Foods of Ohio, Inc.*, 66 Ohio App.3d 588, 589-592, 585 N.E.2d 892 (11th Dist.1990); *Wolf v. Big Lots Stores, Inc.,* 10th Dist. No. 07AP-511, 2008-Ohio-1837, ¶ 13; *Carr v. Cent. Printing Co.* 2d Dist. No.

18281, 2000 WL 1513914 (Oct. 13, 2000); *Waugh v. Tri-Star Packaging Products Corp.* 3d Dist. No. 2-97-22, 1997 WL 730261 (Nov. 24, 1997), *Carrico, supra.*

**{¶30}** The Kinderdines argued at length to the trial court and now on appeal that Callos retained a right of unfettered direction and control of its employees at Kirtz, contending the contract between Callos and ESC specifically stated that Callos retained this right. However, the Kinderdines fail to acknowledge that the party which provides direction and control over the employees on a day-to-day basis is dispositive of this analysis as a matter of Ohio law.

**{¶31}** There is no genuine issue of material fact that day-to-day oversight of the employees fell squarely upon the ESC. There were numerous references made by several witnesses that Jennifer Whittemore, director of the summer program and ESC employee, supervised the workers and staff at Kirtz, and they reported to her. In her deposition Whittemore testified that as the director she was in charge of organizing staff, scheduling, and meeting with staff. Richard Denamen, superintendent of ESC, testified in his deposition that ESC operated Kirtz and retained the right to direct the activities of the employees.

**{¶32}** Even taking into consideration any conflicting statements made by the many deponents, none testified that Callos had any oversight of the locker room door, the pool cover, the daily schedule, the actions of the employees, or any of the day-to-day operations of the program. Callos' concession that contractually it provided ESC with payroll services and paperwork processing does not change which entity is vicariously liable for the staff working at Kirtz. Consistent with the rationale in *Carrico, McNeal, Wolf, Carr* and *Waugh*, we hold that the employees were loaned servants supervised and controlled by ESC. Accordingly, the Kinderdine's assignment of error is meritless. Summary judgment to Callos on the basis of the loaned servant doctrine was correct, and the trial court's decision is affirmed.

Alleman's Individual Liability

**{¶33}** In their sole assignment of error, the Kinderdines assert:

The trial judge erred, as a matter of law, by granting a judgment on the pleadings in favor of Defendant-Appellee, Breanna Alleman.

{¶34} In light of the disposition of our resolution of the Kinderdines' appeal of the trial court's grant of summary judgment in favor of Callos, the merits of this appeal are moot. App.R. 12(B). The Kinderdines asserted in their complaint against Alleman that she was acting within the scope of her employment. As Alleman was an employee of ESC, pursuant to the loan servant doctrine, she is immune from liability pursuant to R.C. 2744.03(A)(5). Further, the Kinderdines have failed to meet their burden of proof, making conclusory allegations rather than alleging operative facts demonstrating that Alleman acted in a willful, wanton or reckless manner. R.C. 2744.03(A)(6)(b).

{¶35} In sum, for the reasons discussed herein, in Appeal Nos. 2014 MA 0174 and 0180, the judgments of the trial court are reversed, and summary judgment is granted in favor of BDD and ESC and their employees. In Appeal Nos. 2014 MA 0177 and 0181, the judgments of the trial court are affirmed.

Waite, J., concurs.

Robb, J., concurs.